UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED ROAD TOWING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14 C 10191 |
| | ) | |
| INCIDENTCLEAR, LLC, GEORGE BERGERON, and RYAN DAVIDS, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Now before the Court is Defendant IncidentClear LLC ("IncidentClear"), George Bergeron ("Bergeron"), and Ryan Davids ("Davids") (collectively the "Defendants") motion to dismiss brought pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). The Defendants also move to strike two paragraphs of Plaintiff United Road Towing Inc.'s ("United") complaint. For the following reasons, the Defendants' motion to dismiss is denied and their accompanying motion to strike is also denied.

## BACKGROUND

For the purposes of the instant motion, the following well-pleaded allegations derived from United's complaint are accepted as true for the purposes of this motion.

1

The Court draws all reasonable inferences in favor of United. *Purdue Research Found v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003).

United is a Delaware corporation with its principal place of business in Mokena, Illinois and is a citizen of Delaware and Illinois. United provides towing and highway assistance services to municipalities and other local governmental authorities throughout the United States. United deploys a fleet of vans and tow trucks along highway and road systems to look for and assist broken down and stranded motorists and provide them with towing, transport, recovery and other services.

In 2006, United purchased Export Enterprises of Massachusetts, Inc. ("Export") in a stock transaction (the "Acquisition") from Bergeron's wife. Bergeron was an employee of Export when United was purchased. At the time of the Acquisition, Export was in an existing contractual relationship with the Massachusetts Department of Transportation ("MassDOT") to perform towing and highway assistance services across six separate geographic regions within Massachusetts. As part of the Acquisition, United acquired, among other things, all of Export's goodwill, trade secrets, intellectual property, customer lists, supplier lists, inventory, and customer agreements. As part of the sale of Export, Bergeron became an employee and officer of United and executed a series of successive employment agreements in 2006, 2007 and most recently in 2010 (the "Bergeron 2010 Employment Agreement"). When Bergeron became Vice President of Towing Operations, he was responsible for overseeing the bidding for the MassDOT contract on behalf of United.

Davids began his employment with United in April 2006. Davids started as a financial analyst and then corporate controller, and on January 1, 2011, he became Vice President of Business Development. As a condition of his employment and promotion, Davids executed an Employment Agreement in 2011("Davids' 2011 Employment Agreement").

Both Bergeron's 2010 and Davids' 2011 Employment Agreements contain a finite term of employment contained in the "Employment Period" provision which provides:

> (b) **Employment Period**. The period during which the Employee shall serve as an employee of the Company (the "Employment Period") shall commence on the date hereof, and unless earlier terminated pursuant to this Agreement, shall expire on the twelve (12) month anniversary of the date hereof (unless extended by mutual agreement of the parties hereto).

Bergeron's and Davids' Employment Agreements contain a series of Restrictive Covenants that broadly prohibit a variety of conduct related to the disclosure of confidential information or engaging in business associations which are detrimental to United. The Restrictive Covenants, contained in the Employment Agreement, were in force "during the tenure of Employee's employment with [] [United] and for a period of two (2) years following termination . . . ." Section 3 of both Bergeron's and David's Employment Agreements state:

> **Restrictive Covenants**. In consideration of the foregoing, Employee agrees that Employee shall not, directly or indirectly:
>
> (a) during the tenure of employee's employment with the Company and for a period of two (2) years following termination thereof, alone or as a

partner, joint venture, officer, director, employee, manager, executive, advisor, consultant, agent, sales representative, independent contractor, owner, lender, financier, or security holder of any company or business, in any activity in direct or indirect competition with the Business . . . ;

(b) during the tenure of Employee's employment with the Company and for a period of two (2) years following termination thereof, directly or indirectly, (i) induce any person which is a customer of the Company, its subsidiaries, successors or assigns (collectively, the "United Companies") to patronize any business directly or indirectly in competition with the Business conducted by the United Companies; (ii) canvass, solicit or accept from any person which is a customer of the United Companies, any such competitive business; or (iii) request or advise any person which has a business relationship with the United Companies to withdraw, curtail or cancel any such person's business with such entity;

(c) during the tenure of Employee's employment with the Company and for a period of two (2) years following termination thereof, directly or indirectly, (i) induce any person which is a customer of the Company, its subsidiaries, successors or assigns (collectively, the "United Companies") to patronize any business directly or indirectly in competition with the Business conducted by the United Companies; (ii) canvass, solicit or accept from any person which is a customer of the United Companies, any such competitive business; or (iii) request or advise any person which has a business relationship with the United Companies to withdraw, curtail or cancel any such person's business with such entity.

(d) at any time following the date hereof, directly or indirectly, in any way utilize the United Companies' customer lists or pricing data in connection with any business activity directly or indirectly in competition with the Business.

As executives of United, Bergeron and Davids participated in URT Holdings Inc.'s ("URT Holdings") 2007 Omnibus Stock Incentive Plan and 2011 Amended and Restated Omnibus Stock Incentive Plan (the "Plans"), pursuant to which they were awarded options to purchase shares of URT Holdings common stock. URT Holdings

is the parent company of United. Those awards were memorialized in Award Agreements into which Bergeron and Davids entered into in 2008 (Bergeron and Davids) and 2011 (Davids) (the "Award Agreements").

In late 2012 or early 2013, Bergeron approached the president of United and tried to buy Export back from United for the same price that his wife sold the company for in 2006. United declined the offer. In July 2013, Good Guy Towing LLC ("Good Guy Towing") registered as a business entity doing business in the State of Massachusetts. Good Guy Towing was started by Bergeron's wife and Carl Bergeron, Bergeron's relative. Like United, Good Guy Towing provided motor vehicle towing, recovery and transport services to municipalities. Additionally, in July 2013, United learned that Bergeron asked United's general manger, Roger Toro ("Toro"), to divert a bid request to Good Guy Towing for a Boston, Massachusetts based towing contract. United's Chief Executive Officer Jerry Corcoran ("Corcoran") confronted Bergeron about his conduct and when Bergeron could not explain the incident, United terminated Bergeron's employment for cause in July 2013.

After Bergeron's termination, Corcoran later called Bergeron and requested that he come to United's headquarters in Mokena, Illinois. Bergeron, not knowing the reason for Corcoran's requested meeting, immediately called Davids. While at work at United, Davids was overheard having a conversation with Bergeron discussing their plan to open a competitive business venture. Soon after Bergeron's departure, Davids resigned in August 2013.

5

On April 28, 2014, Bergeron and Davids formed IncidentClear with another former United employee, Timothy Postma. Like United, IncidentClear provides towing, highway assistance services, transport and recovery services. In November 2014, IncidentClear was awarded a contract with MassDOT to provide highway assistance services across six regions in Massachusetts. United previously maintained the MassDOT contract through its purchase of Export and submitted bids to continue with MassDOT, only to lose to IncidentClear.

On December 19, 2014, United filed a six-count complaint against the Defendants. United contends that: (1) all the Defendants violated the Illinois Trade Secrets Act; (2) Bergeron and Davids are in breach of contract; (3) Bergeron and Davids are liable for tortious interference with their contract; (4) all the Defendants tortuously interfered with United's prospective economic relationships; (5) Bergeron is in breach of his fiduciary duty of loyalty; and (6) Davids committed conversion. On January 12, 2015, the Defendants moved to dismiss two counts of United's complaint.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss is used to test the legal sufficiency of a complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis."

*Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Additionally, the allegations in the complaint must "actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above a speculative level." *Tamayo*, 526 F.3d at 1084 (emphasis in original).

A document that is attached to a pleading "is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Thus, when ruling on a 12(b)(6) motion to dismiss, a court must "consider documents attached to the complaint as part of the complaint itself." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (citing *Int'l Mktg., Ltd. v. Archer–Daniels–Midland Co.,* 192 F.3d 724, 729 (7th Cir. 1999)).

## DISCUSSION

The Defendants move to dismiss United's breach of contract claim and its tortious interference with contract claim. The parties do not dispute that Illinois law governs the disposition of all claims. *See Auto–Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.").

**I. The Defendants' Motion to Strike**

As a preliminary matter, the Defendants move to strike paragraphs 8 and 58 from United's complaint pursuant to Rule 12(f). Under Rule 12(f), a district court has the discretion to "strike from a pleading an insufficient defense or any redundant,

immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); *see Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.,* 554 F.3d 1133, 1141 (7th Cir. 2009). "Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice." *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). The Defendants move to strike both paragraphs of United's complaint that discuss Bergeron's wife being listed as Export's sole owner for the purpose of bidding on contracts as a women-owned business. United's allegation is buttressed by Bergeron's claim that he was the sole prior owner of Export, when bidding on the recent IncidentClear MassDOT contract. The Court is not confused and prejudice will not result from denying the motion to strike, as the allegations concerning Bergeron's ownership or control of Export prior to the Acquisition are relevant to United's claim. The Defendants' motion to strike is denied.

**II. Breach of Contract (Count II)**

United alleges in its complaint that Bergeron and Davids breached their Employment Agreement and Award Agreement by engaging in activity that directly competed with its business. The Defendants contend that United cannot maintain its breach of contract claims based on the alleged breach of the Employment Agreements or Award Agreements because both agreements are unenforceable. The Court will resolve the viability of sustaining a breach of contract claim for each agreement.

### A. Employment Agreements

The Defendants argue that their Employment Agreements and the ancillary Confidentiality Agreements expired a year after they were signed, thus rendering the restrictions in both Employment Agreements unenforceable. To prevail on a claim for breach of contract under Illinois law United must prove: "(1) the existence of a contract, (2) the performance of its conditions by the plaintiff, (3) a breach by the defendant, and (4) damages as a result of the breach." *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 626 (7th Cir. 2013) (quoting *Law Offices of Colleen M. McLaughlin v. First Star Fin. Corp.,* 963 N.E.2d 968, 981 (Ill. App. 2011)). United asserts that Bergeron and Davids incorrectly view the Employment Agreement as being limited to the time period laid out in the Employment Period section, when the Restrictive Covenants section is broader and covers Bergeron's and Davids' conduct alleged in its complaint.

Bergeron signed his Employment Agreement in 2010 and Davids signed his Employment Agreement in 2011, with both employees leaving United in 2013. The Defendants contend that the one-year Employment Period contained in Bergeron's and Davids' Employment Agreements limits the applicability of the Restrictive Covenants. The Employment Period provision in the Employment Agreement explicitly limits the time Bergeron and Davids are to be employed by United to one year. However, the Employment Period provision goes on to allow for the extension of the employees term by mutual extension. Bergeron's 2010 Employment

Agreement's Employment Period expired on May 17, 2011. Bergeron continued his employment with United for an additional two years after the expiration of his Employment Period. Davids' 2011 Employment Agreement's Employment Period expired on January 1, 2012. Davids continued his employment with United for an additional year and a half after the expiration of his Employment Period. Given the fact that both Bergeron and Davids continued for more than a year after the expiration of their Employment Agreements, a reasonable inference can be drawn that the parties mutually agreed to continue their employment relationship. *See Foster v. Springfield Clinic*, 88 Ill. App.3d 458, 463 (Ill. App. 1980). The Court concludes that Bergeron and Davids extended the terms of their Employment Agreements with United through mutual agreement. As such, the terms of the Restrictive Covenants are, therefore, enforceable.

Not only was Bergeron's and Davids' Employment Agreements extended by mutual agreement, the Restrictive Covenants are temporally broader than the Employment Period. The Defendants' argument, which tethers the Employment Period to the prohibitions set forth in the Restrictive Covenants, does not comport with the plain language of the Employment Agreement. The Employment Period provision solely sets forth the time period Bergeron and Davids were to be employed by United. The Restrictive Covenants section is distinct and is laid out in a later separate section of the Employment Agreement. Section 3(a), (b) and (c) of Davids' 2011 and Bergeron's 2010 Employment Agreements state that they are bound by the

restrictive terms of the Agreements "during the tenure of [Bergeron and Davids'] employment with [] [United] and for a period of two (2) years following termination . . . ." Accordingly, the Employments Agreements are enforceable and Bergeron and Davids are bound to the Restrictive Covenants found therein.

### B. Award Agreements

The Defendants posit that United cannot sustain a claim for a breach of its Award Agreements because United was never a party or beneficiary to the Award Agreements. The Defendants primarily rely on the fact that the Award Agreements were solely entered into between URT Holdings, Bergeron, and Davids, without any mention of United. Therefore, the Defendants conclude that United cannot maintain its breach of Award Agreement action.

Bergeron and Davids, as management employees of United, entered into the Award Agreements with URT Holdings to "advance the best interests of [URT Holdings] by providing those persons who have substantial responsibility for it or its Subsidiaries' management and growth . . . ." The Seventh Circuit in *Aurora Blacktop Inc. v. American Southern Ins. Co.*, 654 F.3d 713 (7th Cir. 2011), determined that a beneficiary to a contract is a proper plaintiff under certain situations. "In Illinois, if a contract is entered into for the direct benefit of a third person who is not a party to the contract, that person may sue on the contract as a third-party beneficiary. The test is whether the benefit is direct, in which case the person may sue, or incidental, in which case the person may not." *Id*. at 654 F.3d at 716-17.

11

Despite the Defendants' protestations, the Award Agreements were clearly entered into for the direct benefit of United. United is a wholly-owned subsidiary of URT Holdings. The Award Agreements were provided to Bergeron and Davids to encourage both managerial employees to contribute to the growth of United and to remain employed by United. The Award Agreements were provided to encourage loyalty to URT Holdings and United. In addition to engendering loyalty, the Award Agreements also provided protections for URT Holdings and United. The 2007 Plan prohibits Bergeron from engaging in any "Competitive Activity" and customer solicitation or employee recruitment with respect to URT Holdings, and United as its affiliate. Accordingly, United can maintain a claim for breach of Bergeson's and Davids' Award Agreements.

The Defendants continue to argue that even if United can maintain a breach of contract claim, the Award Agreements have expired. The Restrictive Covenants section of Bergeron's and Davids' Award Agreements prohibited either employee from engaging in business activities that compete with United for a term of 12 months after their departure from United.

Bergeron was terminated in July 2013 and Davids resigned in August 2013. While employed at United it is alleged that both employees planned to start a business that competed directly with it. Eventually, their plan came to fruition as they founded IncidentClear in April 2014. IncidentClear immediately competed for the same business as United. The Court finds that United has sufficiently pled that Bergeron

and Davids violated the terms of their Awards Agreements both during their employment at United and during the 12 month time period following their departure from United.

Both Bergeron's and Davids' Employment Agreements and the Award Agreements are valid and enforceable. The Court denies Defendants' motion to dismiss Count II of United's complaint.

**II. Tortious Interference with Contract (Count III)**

The Defendants argue that United cannot maintain its tortious interference with contract claim due to the fact that Bergeron's and Davids' Employment Agreements and Confidentiality Agreements were expired. To prevail on a claim for tortious interference with contract under Illinois law, United must establish: "(1) a valid contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional and malicious inducement of the breach of the contract; (4) breach of contract caused by defendant's wrongful conduct; (5) resultant damages to the plaintiff." *George A. Fuller Co. v. Chicago Coll. of Osteopathic Med.*, 719 F.2d 1326, 1330 (7th Cir. 1983).

The Defendants essentially repeat their previously rejected arguments concerning the expiration of Bergeron's and Davids' Employment Agreements and Award Agreements. The Court determined that Bergeron's and Davids' Employment Agreements, with their ancillary Confidentiality Agreements, were valid. Accordingly the restrictions in those agreements are enforceable. United has

sufficiently alleged that Bergeron and Davids engaged in conduct that was in violation of the Employment Agreements and Award Agreements both during their tenure at United and after their departure from United. Thus, the Defendants' motion to dismiss Count III of United's complaint is denied.

## CONCLUSION

For the aforementioned reasons, the Court denies the Defendants' motion to dismiss for failure to state a claim concerning Count II and Count III. The Court also denies the Defendants' motion to strike.

Dated: 2/19/2015

_____
Charles P. Kocoras
Unite States District Court Judge